302 So.2d 690 (1974)
Mrs. Bereada C. FONTENOT, Individually and as Natural Tutrix of the unborn child, and as Administratrix of the Estate of Charles Fontenot
v.
ANNELIDA ACRES, INC., et al.
Olive FONTENOT
v.
ANNELIDA ACRES, INC., and United States Fidelity & Guaranty Company.
Nos. 4701, 4702.
Court of Appeal of Louisiana, Third Circuit.
October 16, 1974.
Rehearing Denied November 20, 1974.
*692 Edwins, Cave & McKay by R. C. Edwins, Baton Rouge, for plaintiffs-appellants.
Caffery, Duhe & Davis by John M. Duhe, Jr., New Iberia, Sidney P. Landry, Jr., Lafayette, and Burton E. Cestia, Jr., New Iberia, for defendants-appellees.
Before CULPEPPER, MILLER and WATSON, JJ.
WATSON, Judge.
These cases arise from the death of Charles Fontenot on April 28, 1970.
The first suit, No. 4701, was filed by Mrs. Bereada C. Fontenot, widow of Charles Fontenot, individually, and as natural tutrix of her unborn child, and as administratrix of the estate of Charles Fontenot, alleging that Charles Fontenot's death resulted from the negligence of certain defendants and that she and her unborn child were entitled to damages. Defendants, Earl J. Hebert, Allen Allain and Wilbur J. Allen, were named as officers and stockholders in Annelida Acres, Inc. (hereafter sometimes called "Annelida").
As an alternative cause of action, in the event that it should be found that the deceased Fontenot was an employee of Annelida, Mrs. Bereada C. Fontenot asked payment of workmen's compensation benefits.
In the second suit, No. 4702, Mrs. Olive Fontenot, mother of Charles Fontenot, filed suit alleging that she was dependent upon the support of her deceased son and entitled to workmen's compensation benefits.
Annelida and its workmen's compensation insurer, United States Fidelity & Guaranty Company, filed an answer and third party demand in No. 4702 against Alora Michelle Richard and Charles James Richard, unemancipated illegitimate minor children of Charles Fontenot, and Mrs. Bereada C. Fontenot, individually, and as duly appointed tutrix of her unemancipated child, Charles Fontenot, Jr. The third party demand brought these parties into the suit and required them to assert whatever claims they might have for workmen's compensation benefits. Both Charles James Richard and Charles Fontenot, Jr. were posthumous children. A curator was appointed to represent the minors, Alora Michelle Richard and Charles James Richard. These minors reconvened for workmen's compensation benefits, alleging that: (1.) their father, Charles Fontenot, was killed while in the course and scope of his employment with defendant, Annelida; and (2.) they were completely dependent upon him for support, Charles James Richard, unborn at the time of his father's death, through his mother, Linda Louise Richard.
Annelida is engaged in the business of raising and selling worms for fish bait. Its employee, Leroy Alexander, a truck driver, made regular trips from Jeanerette, Louisiana to Jackson, Mississippi to deliver worms. He was usually accompanied on such trips by another employee of Annelida. On April 28, 1970, he could not obtain another regular employee and asked Charles Fontenot to accompany him. During the course of the trip, Charles Fontenot died as the result of injuries received when the truck overturned in the Parish of Tangipahoa. State Farm Mutual Automobile Insurance Company was named defendant in No. 4701 as the automobile liability insurer of Leroy Alexander.
The trial court consolidated the suit of Mrs. Olive Fontenot with the alternative demand for workmen's compensation in the suit of Mrs. Bereada C. Fontenot. Following trial, the court held that Charles Fontenot was in the course and scope of his employment with Annelida at the time of his death and gave judgment in favor of his mother, Olive Fontenot, and his legal widow, Bereada C. Fontenot, for burial expenses of $500.00 each in accordance with a stipulation between these parties. There was also judgment in favor of defendant, Annelida, and its insurer, United States Fidelity & Guaranty Company, and against *693 plaintiffs, Olive Fontenot and Bereada C. Fontenot, individually and as natural tutrix of Charles Fontenot, Jr., and against the minor, Alora Michelle Richard, dismissing all other claims of these plaintiffs and this third party. The minor, Charles Richard, is not mentioned in the judgment of the trial court.
The trial court found in its reasons for judgment that the decedent was a casual employee of defendant, Annelida, and that his dependents, if any, were entitled to the benefits of the compensation act, citing Beard v. Wilson Wholesale Distributors, Inc., 215 So.2d 664 (La.App. 1 Cir. 1968). However, the court then decided that decedent had no dependents. The trial court stated that the decedent's two posthumous children were not dependents on the basis of Williams v. American Employers Insurance Company, 237 La. 101, 110 So.2d 541 (1959). The trial court found that the decedent was not supporting his mother, his legitimate wife or his illegitimate child, Alora Michelle Richard.
Decedent's legal widow, Mrs. Bereada C. Fontenot, has appealed from the judgment of the trial court on behalf of herself and the posthumous legitimate child. The judgment is final as to the other parties. The attorney for Mrs. Bereada Fontenot has made four specifications of error on the part of the trial court as follows:
1. In not considering Mrs. Fontenot's wrongful death action;
2. In finding that the deceased, Charles Fontenot, was acting in the course and scope of his employment at the time of his death;
3. In holding that a posthumous child is not a dependent within the meaning of the Louisiana Workmen's Compensation Act;
4. In finding that Mrs. Bereada Fontenot and her posthumous child were not entitled to workmen's compensation benefits because they were not living with or receiving support from the deceased at the time of his death.
We believe that there are only two issues which are decisive. These are: (1) whether Fontenot was an employee of Annelida; and (2) whether his wife and legitimate posthumous child were dependent on him within the contemplation of the Louisiana Workmen's Compensation Act. If compensation is found to be due, then it will become necessary to consider a third issue, that is, the amount of the benefits.
The testimony was as follows:
Carl or Karl Gugenheimer, a grocer, testified that Charles Fontenot worked parttime for him during 1970. He said he paid Charles Fontenot $35.00 each weekend, and Charles sometimes worked a few hours during the rest of the week, earning an average of around $8 for this additional work, together with some groceries.
Leroy Alexander testified as follows: He was working for Annelida on April 28, 1970, as a supervisor and made trips from Jeanerette, Louisiana to Jackson, Mississippi at least once and sometimes twice a week to deliver worms. Charles Fontenot had talked to him several times about a job. Prior to the trip on which Charles Fontenot was killed, he could not locate Ronald Harold Francis, the employee who was scheduled to make the trip. He went by Charles' mother's house; Charles got in the truck with him; and they loaded the truck. He told Charles he would be paid for the trip but not how much it would be.
Leroy Alexander testified further that he was responsible for hiring a helper for the trips, who was paid about $1.50 an hour, although his brother-in-law, Robert Raymond, once accompanied him just for the ride without being paid. The corporation, Annelida, sometimes knew who was going to accompany him on the trips and sometimes did not learn who it was until after a trip was completed. On the occasion that Alexander's brother-in-law went along he also had Larry Butts accompany *694 him as his paid helper. He never went alone since he needed help in loading and unloading. The business was owned by Mr. Ronald Hebert and Mr. Earl Hebert, Sr., and he never did any hiring or firing of the farm personnel other than for the trips.
Mrs. Olive Fontenot, the mother of Charles Fontenot, testified that a man came to the door on the morning of the accident and said he had a day's work for her son. She recalled that Charles said he was going to Jackson to deliver some worms. He had been living with her since before Christmas, but she testified that she did not know whether her son was supporting his wife or not. She also gave information concerning Charles' past jobs and his possible future employment. She testified that Charles was doing odd jobs in addition to his work at the grocery before his death and that she and Charles operated a small restaurant.
Mabel Madise testified that she was the daughter of Olive Fontenot and the sister of Charles Fontenot. She said Charles took her to New Iberia the day before his death and told her that he was going to work at the same place Leroy Alexander worked.
Thelma Carroll, another daughter of Olive Fontenot and sister of Charles Fontenot, testified that Charles was living with their mother at the time of his death.
John L. Dupuis testified that he was employed by Charles and Olive Fontenot to keep records for their restaurant. He filed the tax return for Olive and Charles Fontenot for 1969, and the W-2 form showed that Charles Fontenot earned $1974.00.
Robert Raymond testified that he knew Charles Fontenot and Leroy Alexander and made a trip with Leroy on the worm truck the month before Charles was killed. He said he was not paid for making the trip, and he and Leroy were the only two people along.
Kaiser Moore testified that Leroy had asked him about making the trip that Charles Fontenot made, but he had to go to work and did not make the trip. There was no mention made of money in connection with the proposed trip and Moore did not think he would have been paid if he had made the trip.
Donald Ray Carter testified that he had asked Leroy Alexander if he could take a trip with him about a month before the accident. Carter said he did not go because his mother said it was too far and no mention was made of pay for the trip.
Henry Feast testified that he is a heavy equipment worker and saw Charles Fontenot the night before he was killed. According to Feast, both Charles Fontenot and Leroy Alexander said they were going to Mississippi the next morning but no mention was made of pay. Feast testified that he himself had gone on the trip and had been paid for it, but this was after Charles Fontenot's accident.
The testimony of Mrs. Bereada Fontenot may be summarized as follows:
She married Charles Fontenot June 7, 1969, in Jeanerette, and they were not legally separated or divorced at the time of his death. She saw him almost every day at the washateria, the grocery store and her home. She and Fontenot had only one child, Charles Fontenot, Jr., born July 19, 1970, subsequent to her husband's death. He was working at Avondale sandblasting right after they got married and was laid off in February of 1970. He then worked offshore until March of 1970. He did not have a regular job at the time of his death. She said he stopped living at her home the last of November, 1969, but gave her some support until they had a fight in January. He then stopped coming by the house until the Sunday before he was killed when he said he wanted to come back to her before the child was born in order for the baby to have a daddy. She told him at that time he could come back. Between June 7, 1969, and November 28, 1969, Charles gave *695 her his entire paycheck, but he worked at Gugenheimer's grocery on weekends for spending money. She went to court and got a judgment for non-support on February 17, 1970, for $25 a week. Only two payments of $25 each were made on the judgment. She was working during her marriage and made $35 a week until she had the baby. Charles did not give any money to his mother at the time he was living with her and, as far as she knew, did not give any money to Linda Richard.
Earl J. Hebert testified that he is a stockholder and president of Annelida Acres, Inc.; that Leroy Alexander was employed by the corporation as manager of the farm when Hebert was not there and also made the deliveries of worms to Jackson, Mississippi and Hammond. Hebert testified that Leroy Alexander had authority to hire helpers for these trips and never made a delivery alone to his knowledge.
Concerning the deceased's pay, Hebert testified that a check was mailed to Fontenot's wife for the trip on which he was killed but it was returned uncashed to the company. According to Hebert, the check to Charles Fontenot was dated May 11, 1970, in the amount of $18.54. He had no explanation as to why that particular check was not mailed the day after the trip was made rather than 12 to 13 days later, other than to state that Charles Fontenot was not there to come by and get it.
Mrs. Earl J. Hebert, Sr. testified that she was the bookkeeper for Annelida Acres, Inc. and that she made out the checks for Leroy Alexander's helpers on the delivery trips to Mississippi. She said she did not always know who was going with him; if he took a regular employee on a trip she would know about it in advance, but otherwise she would find out when they returned. Mrs. Hebert testified that on the trip on which Charles Fontenot died Leroy Alexander was supposed to get Larry Butts to accompany him but said he might take Charles Fontenot. She said attorney Wilbur Allain told her to send Charles Fontenot's check to his wife rather than his mother.
I. EMPLOYMENT
As to the first issue, employment, we agree with the trial court that Charles Fontenot was rendering a service for Annelida in connection with its business at the time of his death and is presumed to have been an employee of the corporation. LSA-R.S. 23:1044[1]. The record establishes that Leroy Alexander had authority to hire helpers for his delivery trips and these helpers were paid by the corporation. We conclude that the trial court was correct in holding that Charles Fontenot was in the course and scope of his employment with Annelida at the time of his death and that recovery, if any, is governed by the provisions of the Louisiana Workmen's Compensation Act.
We note that the trial court was within its discretion in declining to consider Mrs. Bereada C. Fontenot's wrongful death action with the compensation claims.
II. RIGHTS OF THE WIFE AND POSTHUMOUS CHILD
The second question to be considered is whether Charles Fontenot's wife and legitimate posthumous child are entitled to recover under the Louisiana Workmen's Compensation Act. The trial court denied recovery to them on the basis of Williams v. American Employers Insurance Company, *696 supra. This case dealt with an illegitimate posthumous child and is therefore distinguishable. LSA-R.S. 23:1021 (3) states:
"`Child' or `children' covers only legitimate children, stepchildren, posthumous children, adopted children, and illegitimate children acknowledged under the provisions of Civil Code Articles 203, 204, and 205." (Emphasis ours)
Affiliated Foods, Inc. v. Blanchard, 266 So.2d 539 (La.App. 3 Cir. 1972) held that a posthumous child is entitled to benefits only if he can prove that the mother carrying him was dependent at the time of the accident and death. Although the legal widow, Mrs. Bereada Fontenot, was working, she had a judgment, obtained in a non-support action, which required her husband to support her at the rate of $25 a week and she had collected two payments. This lady had done everything our law provides to enforce her rights of support. Therefore, we hold that she and her unborn child were partially dependent upon him for support at the time of death. They are entitled to recover under the provisions of LSA-R.S. 23:1252[2], there being no person wholly dependent for support on the deceased, Charles Fontenot.
As to the posthumous child, Charles Fontenot and the estranged wife and widow, Mrs. Bereada Fontenot, the trial court erred in finding it necessary for them to be completely dependent on the decedent to recover. LSA-R.S. 23:1253[3] envisions partial dependency as sufficient for payment of compensation benefits.
III. AMOUNT OF BENEFITS PAYABLE
Having determined that the widow and the posthumous child are entitled to payment of weekly compensation benefits as a result of the death of Charles Fontenot, it now becomes necessary to determine the amounts to which they are entitled. LSA-R.S. 23:1231[4] provides a formula for calculating payments to a person partially dependent upon the deceased. LSA-R.S. 23:1232[5] provides a schedule of payments for dependents.
*697 As to the posthumous child, it is impossible to calculate the benefits under the formula since there is no method of determining contributions to the support of an unborn child. Accordingly, the posthumous child would be entitled to the statutory minimum. Freeman v. New Amsterdam Casualty Company, 199 So.2d 356 (La.App. 3 Cir. 1967). At the time of Fontenot's death the minimum rate was $12.50 per week. LSA-R.S. 23:1202, as amended by Act 25 of 1968, Ex.Sess.
Likewise, the wife would be entitled to only the statutory minimum since the actual contributions by Charles Fontenot toward her support during the year prior to his death in proportion to his wages falls far short of reaching a percentage figure which, under LSA-R.S. 23:1231 and 23:1232, would result in a compensation rate exceeding the minimum.
Accordingly, the judgment of the trial court is affirmed insofar as it found the deceased, Charles Fontenot, to be in the course and scope of employment with Annelida Acres, Inc. at the time of his death. There is no issue before us as to the award of burial benefits of $500 each to Mrs. Olive Fontenot and Mrs. Bereada C. Fontenot; and the trial court's judgment is final in that respect.
Insofar as it dismissed the claims of Mrs. Bereada C. Fontenot, individually, and as tutrix of Charles Fontenot, Jr., the judgment of the trial court is reversed for the reasons assigned.
It is therefore ordered, adjudged and decreed that there be judgment herein against defendants, Annelida Acres, Inc. and United States Fidelity and Guaranty Company, jointly and in solido, and in favor of Mrs. Bereada C. Fontenot, individually, in the amount of $12.50 per week, and for the use and benefit of the minor, Charles Fontenot, Jr., in the amount of $12.50 per week, for five hundred weeks, beginning April 28, 1970, together with legal interest from due dates until paid.
In view of the serious questions in regard to dependency, no award of penalties or attorney's fees is justified.
All costs are assessed against defendants, Annelida Acres, Inc. and United States Fidelity & Guaranty Company.
Affirmed in part; reversed in part and rendered.
CULPEPPER, J., dissents, being of the opinion that at the time of death of the employee, his wife, from whom he was living separate and apart, was not being actually supported by the decedent.
NOTES
[1] LSA-R.S. 23:1044

§ 1044. Presumption of employee status
A person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter.
Every executive officer elected or appointed and empowered in accordance with the charter and by-laws of a corporation, other than a charitable, religious, educational or other non-profit corporation or an official of the state or other political subdivision thereof or of any incorporated public board or commission, shall be an employee of such corporation under this Chapter. As amended Acts 1958, No. 306, § 1.
[2] LSA-R.S. 23:1252

§ 1252. Determination of dependency in other cases
In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death; in such other cases if there are a sufficient number of persons wholly dependent to take up the maximum compensation, the death benefit shall be divided equally among them, and persons partially dependent, if any, shall receive no part thereof.
[3] LSA-R.S. 23:1253

If there is no one wholly dependent and more than one person partially dependent, so much of the death benefit as each is entitled to shall be divided among them according to the relative extent of their dependency. No person shall be considered a dependent, unless he is a member of the family of the deceased employee, or bearing to him the relation of husband or widow, or lineal descendant or ascendant, or brother or sister, or child.
[4] LSA-R.S. 23:1231

For injury causing death within two years after the accident there shall be paid to the legal dependent of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided, for a period of five hundred weeks. If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident.
Amended by Acts 1968, Ex.Sess., No. 25, § 6.
[5] LSA-R.S. 23:1232 provides in pertinent part:

"Payment to dependents shall be computed and divided among them on the following basis:
(1) If the widow or widower alone, thirty-two and one-half per centum of wages.
(2) If the widow or widower and one child, forty-six and one-quarter per centum of wages."