310 So.2d 162 (1975)
Mrs. Juan J. SAMAYOA, Individually, and on behalf of her minor children, John Edward Samayoa and Arvin Basil Melton
v.
MICHEL LECLER, INC., and Aetna Casualty & Surety Company.
Marjorie Nell Cousins WALTER, Individually and on behalf of her minor children, Helmuth Frank Samayoa and Irene Theresa Samayoa
v.
MICHEL LECLER, INC., et al.
Nos. 6707, 6708.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1975.
Rehearings Denied April 15, 1975.
Writs Refused June 17, 1975.
*163 Norman Mopsik, New Orleans, for Majorie (Marjorie) Cousins Walter, and others, plaintiff-appellants.
Adams & Reese, Edward J. Rice, Jr., Robert B. Nolan, Harold A. Thomas, New Orleans, for Michel Lecler, Inc., and Aetna Casualty & Surety Co., defendants-appellants.
James C. Witcher, II, Edward P. Comeaux, New Orleans, for Mrs. Juan J. Samayoa, and others, plaintiffs-appellees.
Before GULOTTA, STOULIG and BOUTALL, JJ.
BOUTALL, Judge.
The facts of these consolidated cases seem virtually undisputed by the three parties. Juan Samayoa married Mrs. Walter in 1965 and of that union two children were born. Proceedings for a divorce were begun in 1970, but before the divorce was granted Juan married the present Mrs. Samayoa in Mexico on December 12, 1970. Samayoa's divorce from Mrs. Walter took effect in January of 1971. Samayoa had previously been cast in judgment for child support to the two children of his first marriage, but apparently made only sporadic payments; his last regular payment being made in December of 1969. At the time of Samayoa's death proceedings were pending in Jefferson Parish seeking to hold him in contempt for failure to pay this child support.
Juan Samayoa was a professional deepsea diver who had worked for the defendants for several years. The terms of his employment were such that he was subject to being called for a job at any time. It was understood that if he was called out for a job the defendant would pay him mileage for his trip to the docks. On June 29, 1972 Samayoa received a call from defendant about a diving job offshore. While driving to the docks early on the morning of June 30, 1972 Samayoa ran off the road and was killed in a collision with a fence.
Both Mrs. Samayoa and Mrs. Walter have sued defendants, claiming death benefits under the Louisiana Workmen's Compensation Act. The defendants have resisted both claims on the grounds that Juan *164 Samayoa was a "seaman" within the meaning of the Federal Jones Act, 46 U.S.C.A. § 688, and that the Federal Statute provides the plaintiffs their sole remedy.
This appeal provides us with two very clear issues for decision.

ISSUE 1.
Was Juan Samayoa, at the time of his death, covered by the Louisiana Workmens Compensation Act, or the Jones Act, or both?
The trial judge in his Reasons for Judgment found that Samayoa was not a seaman and we agree. The record shows that Samayoa was a diver, killed on a Louisiana highway while enroute to his jobsite.
The trial judge found that Samayoa was within the course and scope of his employment when he was killed and defendants do not seriously dispute this finding. Callihan v. Fireman's Fund Indemnity Co., 110 So.2d 758 (La.App.Orl.Cir.1959).
But does the Federal law preempt state recovery? Samayoa had never seen the vessel that was to transport him to his jobsite, yet defendants contend he was a member of the vessel's crew. Samayoa's work did not involve the navigation, movement or anchorage of the vessel and he did not even work on the vessel; he worked in the sea and merely used the vessel as a life supportive device. As the trial judge found, at the time of his death, the fact that Samayoa was a diver bears no relationship to any vessel. We find that the evidence preponderates in favor of the conclusion that Samayoa was not a seaman and therefore he comes squarely within the provisions of the Louisiana Act.
The defendant strongly urges us to deny jurisdiction on the grounds that the Federal Courts have extended the Jones Act to cover this factual situation. We are aware of the fact that if the Jones Act does apply to this situation then we have no jurisdiction. We have searched the decisions of the Federal Courts very carefully and we can find no cases with a similar set of facts. It is true that several cases have held divers to be seamen, however, all these cases are distinguishable on their facts. Taylor v. Packard Diving and Salvage Co., D.C.La., 342 F.Supp. 365, aff'd 5 Cir., 457 F.2d 512; Baker v. Ocean Systems, Inc., 5 Cir., 454 F.2d 379; Smith v. Brown and Root, D.C.La., 243 F.Supp. 130, aff'd 5 Cir., 376 F.2d 852. We cannot believe that the Federal Courts intended to extend the Jones Act to all divers in all circumstances. More particularly, the U. S. Supreme Court has stated that when dealing with the definition of a seaman (the Jones Act does not define the term "seaman") each case is to be decided on its own facts. Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952).
We view this factual situation to be squarely within our jurisdiction, however, were it less so we could foresee use of the "twilight zone" doctrine first applied by the U. S. Supreme Court in Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942). The history of the twilight zone doctrine in Louisiana is confusing and somewhat in doubt, however, we feel it is still a viable doctrine and serves a useful purpose. See Arp v. Maryland Casualty Company, 170 So.2d 166 (La.App. 4th Cir. 1964); 12 Loy.L.R. 57.
The twilight zone doctrine was created to relieve the element of doubt for those claimants whose factual situations left uncertainty as to whether they should proceed with their claims under their state compensation acts or under the Federal Act. The import of the doctrine was to allow these people to proceed under either. This allowed recovery under one statute and averted the possibility that the injured workman would receive nothing if he unluckily chose the wrong statute. We feel this doctrine is most important and grows more so every day since both the Federal Courts and the courts of this state are *165 charged with the duty of liberally construing their compensation acts. As each act is extended to cover more persons, occupations and situations, this area of uncertainty grows larger. Without the twilight zone theory of concurrent jurisdiction we would be forcing claimants to choose the correct court and penalizing them unjustly when they chose the wrong one in a doubtful factual situation. We believe that such a result would defeat the purpose of both the Jones Act and the State Compensation Acts.

ISSUE 2.
Who is entitled to recover the compensation benefits provided by the Louisiana Workmens Compensation Act?
The trial judge made several findings of fact as to this issue and we feel the record supports those findings. Mrs. Samayoa was in good faith relative to the marriage of December 12, 1970 and therefore she would be considered the putative wife of Juan Samayoa and their child, John, would receive all the civil effects of that marriage. Arvin B. Melton, a child of Mrs. Samayoa by a former marriage, was living with and supported by Juan Samayoa. Juan Samayoa, at the time of his death, used his entire salary to support Mrs. Samayoa and the minors, John and Arvin. Mrs. Walter and her two children by Samayoa received no support from Samayoa beyond December of 1969.
The law as applied to these facts is clear and unequivocal. Only those persons "actually and wholly dependent upon his earnings for support at the time of the accident and death ..." are entitled to benefits. LSA-R.S. 23:1231. Mrs. Samayoa and the minors John and Arvin are legal dependents and entitled to recover the benefits under our act. McDermott v. Funel, 258 La. 657, 247 So.2d 567 (1971); Griffitts v. Tiger Well Service, Inc., 226 So.2d 175 (La.App. 3rd Cir. 1969).
Mrs. Walter cites a recent case from our brethren in the Third Circuit, which she says would allow her to receive at least partial benefits. The case of Fontenot v. Annelida Acres, Inc., 302 So.2d 690 (La. App. 3rd Cir. 1974) does have facts somewhat similar to the case at bar. In that case the estranged Mrs. Fontenot had obtained a judgment of child support which she could not execute on. The court said, "This lady had done everything our law provides to enforce her rights to support. Therefore, we hold that she and her unborn child were partially dependent upon him for support at the time of death. They are entitled to recover under the provisions of LSA-R.S. 23:1252, there being no person wholly dependent for support on the deceased, Charles Fontenot." Section 1252 makes it clear that it is to be used only when the deceased has no person wholly dependent on him for support or the entire amount of benefits are not taken up by the wholly dependent persons. In Fontenot the deceased had no one who was dependent upon him at the time of his death. In the case at bar, Mrs. Samayoa, John and Arvin were wholly dependent upon Juan Samayoa and they do exhaust the entire amount of death benefits. For this reason Fontenot is easily distinguishable.
For the foregoing reasons we affirm the judgment of the lower court. Costs of this appeal are to be paid by defendants.
Affirmed.