472 So.2d 18 (1985)
Steven W. MICHALESKI and Sherri Michaleski
v.
WESTERN PREFERRED CASUALTY COMPANY, et al.
No. 85-C-0480.
Supreme Court of Louisiana.
June 28, 1985.
Rehearing Denied September 9, 1985.
*19 F. Hodge O'Neal, III, McKinley & O'Neal, Monroe, for plaintiff-applicant.
Iddo Pittman, Pittman, Matheny, Lewis & Moody, Hammond, James E. Diaz, Jr., Timothy J. McNamara, Onebane, Donohoe, Bernard, Torian, Diaz & McNamara & Abell, Lafayette, Stephen W. Glusman, Glusman & Moore, Baton Rouge, for defendant-respondent.
Paul Ricky Leger, in pro. per.
WATSON, Justice.
Are defendants entitled to a summary judgment on the ground that Ricky Paul Leger was not in the course and scope of his employment on August 15, 1981, when he was involved in an automobile accident?

FACTS
Various defendants[1] filed motions for summary judgment supported by depositions, alleging that Leger was not in the course and scope of his employment at the time of the accident. Summary judgment was granted to all defendants. The Court of Appeal affirmed the judgment as to the employers, NL Industries, Inc., and Amoco Production Company, but reversed and remanded as to the defendant insurance companies because the record did not contain copies of their policies. Michaleski v. Western Preferred Cas. Co., 464 So.2d 325 (La.App. 1 Cir.1984). A writ was granted to review the judgment. 466 So.2d 1294 (La., 1985).
Although there are factual discrepancies in the deposition testimony, there are no genuine issues of material fact. Therefore, the question is whether movers were entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B.[2]
Leger, a resident of Church Point, Louisiana, was employed near Denham Springs, Louisiana, in Livingston Parish, as a motorman at an oil well workover. On August 14, Leger and the other employees set up the rig which had been brought in on trucks from Abbeville.[3] Leger had traveled in the last truck. The men finished work between 6:00 and 8:00 P.M. Leger had had to leave his automobile in Abbeville and returned with one of the truck drivers to retrieve it. He was on the road most of the night bringing his car to the *20 well site. Leger's crew of five started a shift the next morning, the day of the accident, at 6:00 A.M. Leger was working a twelve hour shift, "seven days onseven days off". The time sheet showed that Ricky Leger worked twelve hours, from 6:00 A.M. to 6:00 P.M., on August 15, 1981. During their twelve hour shifts, the men ate on the run.
Leger received an hourly wage of $9.05. He also received $12 a day for food and gasoline from NL and a clothing allowance of $10 a day from Amoco. Both crews stayed in a trailer at the rig site. Leger said this was expected; the toolpusher said the men could sleep wherever they wished. As a practical matter, everyone slept at the well site. Each of the crew members had a separate bed. The company provided linens and the use of the kitchen. There was a disagreement about whether the stove and refrigerator in the crew trailer were operational when the accident occurred. Often the employees cook at the rig site, pooling their funds to buy groceries for the week. There was a grocery store approximately a mile and a half from the drilling site.
George Fritz, the rig supervisor or toolpusher for NL Well Service at the workover site, supervised ten men. Each crew of five included a driller, a derrick man, a motorman, and two floor hands. At the time of the accident, the "rigging up" had been finished and the crews were on a twelve hour schedule. In Fritz's opinion, NL provided trailers and a per diem allowance[4] because the hard physical work required adequate sleep and good eating habits. In an emergency or under extraordinary circumstances, Fritz might call one of the men who was off duty.
Leger's immediate superior was the driller for his crew. The two drillers work under the toolpusher. The drillers and the toolpusher had their transportation furnished by the company. There were three trailers on the site: one for the Amoco "company man", one for the toolpusher, and one for the two crews. The toolpusher was subject to call day and night. The final authority at the rig site was the Amoco company man.
On August 15, Leger and a co-worker, Joseph Matte,[5] had driven five or six miles to eat dinner at the McDonald's in Denham Springs and were returning to the rig site. Leger was exhausted, closed his eyes momentarily, and opened them to see bright lights. Another car was coming out of a curve to Leger's right and he believed that both vehicles were over the center line. There was virtually a head-on collision between Leger's automobile and an automobile driven by Steven W. Michaleski carrying Sherri Michaleski, Arnold L. McLin, Jr., Debbie McLin, and Jaesa McLin as passengers.[6]

LAW
Generally, an employee is outside the course of employment until he reaches the employer's premises. However, payment of travel expenses can place an employee in employment status from the beginning of his travel until the end. Samayoa v. Michel Lecler, Inc., 310 So.2d 162 (La.App. 4 Cir.1975), writ den. 313 So.2d 828 (La., 1975); Pierre v. Gulf Janitorial Serv. of Baton Rouge, Inc., 277 So.2d 509 (La.App. 1 Cir.1973), writ den. 279 So.2d 689 (La., 1973).
An exception to the rule that employees are not in the course of employment going to and from work is recognized when transportation is furnished as an incident of employment, either through a vehicle, a conveyance and driver, or payment of expenses. Griffin v. Catherine Sugar *21 Co., 219 La. 846, 54 So.2d 121 (1951); Welch v. Travelers Insurance Company, 225 So.2d 623 (La.App. 1 Cir.1969), writ den. 254 La. 852, 227 So.2d 594 (1969); Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3 Cir.1970), writ den. 256 La. 894, 240 So.2d 231 (1970); Prothro v. Louisiana Paving Co., Inc., 399 So.2d 1229 (La.App. 3 Cir.1981), writ den. 404 So.2d 278 (La., 1981).[7] When an employer pays expenses and the trip in question is employment connected, an employee is in the course and scope of employment while away from his work place. Austen v. Sherwood, 446 So.2d 274 (La., 1984); Miller v. Keating, 349 So.2d 265 (La., 1977); LeBrane v. Lewis, 292 So.2d 216 (La., 1974). Also see Campbell v. Baker, Culpepper and Brunson, 382 So.2d 1046 (La. App. 2 Cir.1980), writ den. 385 So.2d 793.
An employee is acting within the course and scope of his employment while on a job connected mission which the employer had reason to expect would be performed. Stephens v. Justiss-Mears Oil Co., 312 So.2d 293 (La., 1975); St. Paul Fire & Marine Insurance Co. v. Roberts, 331 So.2d 529 (La.App. 1 Cir.1976). When, at the time of an accident, "the employee is on a mission contemplated by employer and employee for which he is to be compensated,... the employee is within the scope of his employment." O'Brien v. Traders and General Insurance Company, 136 So.2d 852 at 864 (La.App. 1 Cir.1961). Among the factors to be weighed in determining an employer's responsibility for the tort of an employee are: "the time, place and purpose of the act in relation to service of the employer, the relationship between the employee's act and the employer's business... and the reasonable expectation of the employer that the employee would perform the act." Reed v. House of Decor, Inc., 468 So.2d 1159 at 1161 (La., 1985); LSA-C.C. art. 2320.

CONCLUSION
An oil company employee, working "seven days on" with living quarters and a food and gas allowance furnished by the employer, who is returning to the work place from a necessary trip for himself and a co-worker to eat is in the course of his employment. Such a journey is necessitated by the employment, since all the men had to leave the rig site to purchase groceries or a meal. Compare Sellers v. Dixilyn Corporation, 433 F.2d 446 (5 Cir., 1970) where plaintiff had completed his seven days on the rig and was not answerable to the call of duty as he drove home to commence his seven days on shore. Amoco's rig site here was not offshore. However, the very denomination of this employment indicates that Leger was at work during the "seven days on" at the rig site.
Returning from a trip to buy food was an activity arising out of the nature of the employment. The employer anticipated the necessity of these temporary absences, because it compensated the employees with a per diem for their food and gasoline expenses. All of these employees were required to obtain meals or groceries away from the rig site and were furnished an allowance for that purpose. Leger did not deviate either in route or time on his errand. See Wright v. Romano, 279 So.2d 735 (La.App. 1 Cir.1973), writ den. 281 So.2d 757, 758.
Leger's negligence was the result of exhaustion, a foreseeable consequence of a hard twelve hour day. Since the risk of harm could reasonably be attributed to the employer's business, it cannot be said as a matter of law that Leger was not in the course and scope of his employment at the time of the automobile accident.
For the foregoing reasons, the summary judgment in favor of defendants is reversed *22 and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
LEMMON, J., concurs.
MARCUS, J., concurs and assigns reasons.
BLANCHE, J., concurs and will assign reasons.
MARCUS, Justice, concurring.
Whether or not Leger was in the course and scope of his employment at the time of the accident presents a genuine issue as to a material fact which should not have been decided by a summary judgment. Accordingly, I respectfully concur.
BLANCHE, Justice, concurring.
I agree that summary judgment is not appropriate in this case to determine whether defendant's employee, Leger, was in the course and scope of his employment. Summary judgment is only appropriate when there is no genuine issue as to a material fact and when mover has shown that he is entitled to judgment as a matter of law. C.C.P. art. 966. Both lower courts found that Leger was not in the course and scope of his employment and summary judgment was appropriate. From these same facts the majority finds that as a matter of law, plaintiff was acting in the scope of his employment so as to make his employer vicariously liable and summary judgment was not proper.
The matter of law is whether at the time of the accident the tortious conduct of the employee, Leger, was so closely connected in time, place and causation to his employment as to be regarded as a risk of harm fairly attributable to his employer's business as compared with conduct which is purely personal in nature. However, this writer agrees with the lower courts in finding that returning to the job site from a trip to McDonald's to eat a hamburger should be characterized as personal, and in no way benefiting the employer, nor being employment related.
NOTES
[1] NL Industries, Inc., Insurance Company of North America, Walbrook Insurance Company, El Paso Insurance Company, Mutual Reinsurance Company, Dart Insurance Company, Bermuda Fire and Marine Insurance Company, St. Katherine Insurance Company, Bellefonte Insurance Company, CNA Reinsurance Company, Turegum Insurance Company, and Amoco Production Company.
[2] LSA-C.C.P. art. 966 B provides:

"B. The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
[3] This was the third time Leger had worked on this particular rig.
[4] Fritz's testimony indicated the allowance was for food, but he admitted it would also include "any gas that they can afford on the $12." (Depo., p. 391) "They could either buy food or buy gas." (Depo., p. 369) No food was available at the rig site.
[5] His name is spelled Mott in Leger's depositions.
[6] The suit filed by Arnold L. McLin, Jr., Debbie McLin and Jaesa McLin against various defendants was dismissed on joint motion of all parties.
[7] See also Willis v. Cloud, 151 So.2d 379 (La. App. 3 Cir.1963), writ den. 244 La. 623, 153 So.2d 415 (La., 1963), where an employee returning home in his own truck, which was used in performing job duties, was held to be in the course of employment, and Shird v. Maricle, 156 So.2d 476 (La.App. 3 Cir.1963).