DREW, J.
| ] Errol Page appeals a summary judgment that dismissed his personal injury claim against Systems Contracting Corporation on a finding that Systems’ employee, Darrick Johnson, was not in the course and scope of his employment at the time of the accident that injured Page.
We affirm.
FACTS
Systems Contracting Corporation (“Systems”) specializes in the installation of mechanical and process piping at steel mills, paper plants, petrochemical plants, and other facilities. Systems has about 400 permanent employees. It also hires temporary construction employees to work on a project-specific basis. Systems’ projects are generally located in the southeastern United States. Darrick Johnson, Errol Page, and Kenneth Everfield were temporary employees of Systems.
Johnson knew he worked for Systems on a project-by-project basis and for only as long as they needed him on a particular project. He would have to reapply for each future Systems job.
Johnson, ’ a Tallulah resident, first worked for Systems on a construction project in Tallulah. That was also the first time that Everfield and Page worked for Systems. Page is Johnson’s brother-in-law, and Everfield is their cousin. The men were later hired to work on a Systems project in Harrisville, Mississippi. After the project in Harrisville ended, the men were eventually hired to work for Systems on a pipeline project in Mira, Louisiana.
12Everfield, Johnson, and Page received hourly wages as well as a per diem while working for Systems. The amount of per diem varied depending on the project.
Systems’ temporary employees signed a “Per Diem Tax Exemption Form” to receive the per diem. The form required the employee to check one of two boxes. The boxes on the form for the Mira project read:
I moved a distance greater than 50 miles from my permanent residence on a temporary basis in order to work on the project to which I am currently assigned. Therefore, the per diem payment made to me by Systems Contracting is an expense reimbursement not subject to payroll taxes. I am temporarily living in the city or town of Mira, Louisiana. I am working at or near this location beginning today. My lodging expenses are at least $50 per day. If these circumstances change I will immediately notify Systems Contracting.
I did not make a temporary move of greater than 50 miles from my permanent residence. With regard to housing expenses, to the extent such expenses are paid from my per diem, I am accepting the “per diem” payment as taxable compensation and authorize Systems *173 Consulting to withhold all applicable payroll taxes.
At the bottom of the form was a section titled, “Per Diem Terms.” It read:
My agreed per diem is $75 per day. I understand that it will be necessary to furnish information regarding the time and place of expenditures in order to keep the full per diem. If I am reimbursed or advanced amounts for expenses related to days of travel for which I do not actually travel and substantiate, I agree to return such portion of the per diem within a reasonable period. I agree to be held responsible for my portion of withholding- taxes, penalties, and interest, if any, resulting from unsubstantiated per diem allowances.
While working in Mira, Johnson and Page shared a room at The Royal Inn motel (“motel”) in Shreveport. Everfield had a separate room at the motel. Johnson learned about the motel from Scott Hayes, a Systems foreman, who had asked Johnson where he was staying while working in RMira. Hayes had stayed at the motel previously. The motel happened to be the closest one to the Mira job site.
While working on the Mira project, Johnson drove Page around in his truck. Everfield also rode in Johnson’s truck to and from the job site. In return, Ever-field and Page shared in the cost of gas. The men worked a 12-hour shift seven days a week. Their shift was to begin at 7:00 a.m. on the morning of the accident.
Johnson drove to Tallulah after his shift was completed on at least two occasions. That was exactly what Johnson and Page did on January 21, 2010. After their shift ended, they drove to the motel, and then proceeded to Tallulah. They spent the night in Tallulah, and then early the next morning, the men, along with Johnson’s wife, drove from Tallulah to the motel. Johnson estimated that it took about two hours to drive from Tallulah to the motel. They dropped off Mrs. Johnson at the motel, picked up Everfield, and headed on Highway 71 to work. As they did every morning on the way to Mira from the motel, they stopped at a nearby convenience store to purchase snacks and coffee.
As the men drove to work on the morning of January 22, 2010, Johnson’s truck collided with a vehicle driven by Sharon Black. Black and her daughter Lakecia Black died from the injuries they sustained in the accident. Page suffered severe injuries in the accident.

Procedural History

Donyell Black filed suit on behalf of Lakecia Black against Darrick Johnson and Safeway Insurance, the liability insurer of Johnson’s vehicle. The petition was amended to add the Succession of Sharon Black and State pFarm as defendants. State Farm was later dismissed on summary judgment. Safeway was dismissed on summary judgment after it tendered its policy limits into the registry of the clerk of court in a concursus proceeding.
The Pages filed suit against Johnson and Systems. Ledonis Black filed suit on behalf of Sharon Black against Johnson and Systems. The three lawsuits were consolidated.
Systems filed a motion for summary judgment against the claims of the Pages and Ledonis Black on the grounds that Johnson, Page, and Everfield were not in the course and scope of their employment at the time of the accident. Systems answered in the alternative that the Pages’ claim should be dismissed because if Johnson, Page, and Everfield were in the course and scope of their employment at the time of the accident, then their sole remedy against Systems is in workers’ compensation. Submitted in support of the motion were the depositions of John *174 son, Everfield, Page, and Melinda Gathe-right, the vice-president of administration for Systems.
The Pages filed an opposition to Systems’ motion for summary judgment, contending that there were genuine issues of material fact concerning whether Johnson and Page were in the course and scope of their employment at the time of the accident. Submitted in support of their opposition were the depositions of Everfield, Gatheright, Johnson, and Page, and several per diem tax exemption forms.
The trial court granted Systems’ motion for summary judgment and dismissed the Pages’ and Ledonis Black’s claims against Systems. The Pages appealed.
DISCUSSION
IfiThe Pages argue on appeal that a genuine issue of material fact exists as to whether Johnson was within the course and scope of his employment when the accident occurred. They contend that Systems interested itself in Johnson’s transportation to and from work by providing a per diem that eased his burden of travel expenses, that Systems benefited from having its temporary employees lodge near the work site, and that Johnson was on a mission for Systems when he used his personal vehicle to ensure that Everfield, Johnson, and he arrived for work on time.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the mov-ant is entitled to judgment as a matter of law. Id.
The basis for an employer’s liability for its employee’s tort is found in La. C.C. art. 2320. An employer is liable for a tort committed by its employee if, at the time, the employee was acting within the course and scope of her employment. Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994. The course of employment refers to time and place; scope refers to the employment-related risk of injury. Benoit v. Capitol Mfg. Co., 617 So.2d 477 (La.4/12/93).
An employer is responsible for the negligent acts of its employee when the conduct is so closely connected in time, place, and causation to the | f,employment duties of the employee that it constitutes a risk of harm fairly attributable to the employer’s business. Orgeron on Behalf of Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224; Woolard v. Atkinson, 43,322 (La.App.2d Cir.7/16/08), 988 So.2d 836. Factors useful in determining whether the employee’s act was employment-related include the payment of wages by the employer; the employer’s power of control; the employee’s duty to perform the act in question; the time, place and purpose of the act in relation to the employment; the relationship between the employee’s act and the employer’s business; the benefits received by the employer from the act; the employee’s motivation for performing the act; and the employer’s reasonable expectation that the employee would perform the act. Orgeron, supra; Davis v. Green, 44,033 (La.App.2d Cir.2/25/09), 5 So.3d 291, writ denied, 2009-0984 (La.6/19/09), 10 So.3d 742.
An employee going to or coming from work is generally not considered as acting in the course and scope of his employment so as to make the employer lia *175 ble to third persons for the employee’s negligence. Orgeron, supra; Woolard, supra. An exception to this general rule may apply when an employer provides the transportation used by the employee to go to and from work, the employer provides expenses or wages for the time spent traveling in the vehicle, or the operation of the vehicle is incidental to the performance of some employment responsibility. Woo-lard, supra; Davis, supra.
Transportation can be furnished as an incident of employment through a vehicle, a conveyance and driver, or payment of expenses. Michaleski v. Western Preferred Cas. Co., 472 So.2d 18 (La.1985). |7When an employer pays expenses and the trip in question is employment connected, an employee is in the course and scope of employment while away from his work place. Id.
Systems’ vice-president of administration Melinda Gatheright explained that the two components of Systems’ wages are the hourly wage and the per diem. Systems does not pay per diem on every construction project. Systems first examines how competitive a particular labor market is to determine whether it needs to pay a per diem in order to attract workers to the job site or to keep them from working elsewhere. Sometimes Systems will increase hourly wages as an incentive. Systems has had projects where they did not pay a per diem at first, but then had to start paying one to retain temporary employees. Gatheright also recalled one project where the per diem was offered only to a particular level of employees because there was a demand for those employees. In most instances like the Mira project, the per diem is paid to all temporary employees.
Gatheright defined Systems’ per diem payments as an inducement to retain employees. She explained that per diem is just the terminology recognized in their industry for that type of payment. A temporary employee does not have to meet any criteria to receive per diem if it is offered. The per diem was combined with the hourly wages in each paycheck.
Gatheright testified that Systems does not make any arrangements for employees who have to travel a long distance to a work site. Systems does not stipulate what the per diem can be used for since it is provided as a wage, not for travel expenses. It is not specifically meant to be used for gas or lodging expenses.
IsGatheright explained that the purpose of the per diem form is to give the employee the choice of tax treatment of his per diem. It also makes the employee aware that he may have to provide receipts to the IRS. Gatheright has never collected a receipt from an employee to justify the per diem.
Johnson thought Systems paid the per diem only if an employee worked a certain distance from home. Nevertheless, Johnson acknowledged that ■ he lived in his house in Tallulah during the Tallulah job and still received a per diem of $50. Also, despite the language in the per diem form, Systems never required Johnson to prove he lived more than 50 miles away from the job in order to receive the per diem.
Everfield was from Tallulah and had moved back to work there. Everfield had finished working on a facility in Tallulah when Systems hired him to work on their construction project at that same facility. Thus, Everfield received per diem for the Tallulah job while residing there.
Page testified that his residence was in Oak Grove, so he stayed with his parents in Tallulah during the Tallulah job. Page claimed that he did not receive the per diem at first on the Tallulah job because he listed his mother’s Tallulah address on his job application, but he received it once *176 he showed he was. from Oak Grove. Page did not believe that Systems paid per diem on the Tallulah project if an employee was from that local area; however, he also testified that he thought everyone on the Tallulah project received per diem.
Johnson thought the per diem was a reimbursement for living expenses, but not for mileage-to and from work. He believed that he received the per diem so he could stay at a hotel while working in Mira. He 19testified that he was told by a Systems employee that the per diem was provided so workers could find accommodations in Shreveport and not have to return to Tallulah each day. However, Johnson also stated that nobody discussed with him what the per.diem was to be used for.
Page testified that his understanding was the per diem was to be used for transportation and living expenses. He used it for lodging, food, and gas, and would not have been able to afford to stay at the motel without the per diem. Page also testified that nobody with Systems told him why they received the per diem.
Everfield thought it was more convenient to stay at the motel instead of commuting to and from Tallulah. Everfield admitted that nobody from Systems ever told him the company preferred for him to stay close to the job site in Mira.
In Michaleski, supra, the supreme court reversed a summary judgment that had been rendered on the ground that the motorman for an oil well workover was not in the course and scope of his employment when involved in an auto accident while returning to the rig site from a restaurant with a coworker. The motorman received a per diem of $12 for food and gas. Concluding that it could not say as a matter of law that the motorman was not in the course and scope of his employment at the time of the accident, the supreme court stated:
An oil company employee, working “seven days on” with living quarters and a food and gas allowance furnished by the employer, who is returning to the work place from a necessary trip for himself and a co-worker to eat is in the course of his employment. Such a journey is necessitated by the employment, since all the men had to leave the rig site to purchase groceries or a meal. Compare Sellers v. Dixilyn |10 Corporation, 433 F.2d 446 (5th Cir.1970) where plaintiff had completed his seven days on the rig and was not answerable to the call of duty as he drove home to commence his seven days on shore. Amoco’s rig site here was not offshore. However, the very denomination of this employment indicates that Leger was at work during the “seven days on” at the rig site. Returning from a trip to buy food was an activity arising out of the nature of the employment. The employer anticipated the necessity of these temporary absences, because it compensated the employees with a per diem for their food and gasoline expenses. All of these employees were required to obtain meals or groceries away from the rig site and were furnished an allowance for that purpose.
Id., 472 So.2d at 21.
Michaleski is easily distinguished. The motorman and the rest of the crew lived in a trailer at the rig site during their “seven days on.” In contrast, although Johnson worked a 12-hour shift, he never had “seven days on” like the motorman, and did not stay on the job site. The motorman could use his per diem for food or gas, and he had to leave the well site in order to eat or buy food because no food was available at the site. In contrast, Johnson was off work when he finished his shift and was *177 free to do as he pleased until his next shift began. The motorman may have been done with his shift that day, but as the supreme court noted, the denomination of his employment indicated that while at work he was “seven days on.”
It was recognized in Orgeron, supra, that the going and coming rule applies easily when the employee has a fixed place of work, so that travel back and forth between the home and fixed place of work is almost never in the course of employment. The employee in Orgeron worked as a cook for a catering service which assigned him to work for its customers on offshore facilities. After returning to port following a 14-day shift, the employee | nwent to his employer’s office in Houma to get his paycheck. The employee intended then to drive to his home in Alabama. However, his employer had other plans, and told him he was to report early the next morning at a dock in Fourchon, from where he would be taken offshore by a customer for a seven-day shift. The employee spent the night at a motel in Houma, which he paid for himself. The next morning he was involved in an accident while driving to Fourchon in his own vehicle. He did not receive a travel allowance or travel expenses.
The supreme court concluded in Orger-on that the employee’s travel from his home to a particular port, and vice-versa, would arguably fall under the going and coming rule. However, the employee was not traveling from home to work at the time of the accident, as he had gotten only as far as his employer’s office in Houma when he received special orders to go to Fourchon for another assignment early the next morning. The supreme court noted that the assignment was not only principally for the employer’s benefit, but its emergency nature greatly heightened the element of the employer’s control over the employee’s trip to Fourchon. Under the circumstances, the employee was in the course and scope of his employment at the time of the accident.
Systems! only expectation was that Johnson arrive for work on time. It did not require that he live in a certain place or follow a particular routine on the way to work. It did not control his activities when his shift ended. Once Johnson’s shift ended, he was free to return to the motel, drive to Tallulah, or do whatever else he pleased.
| iaIn Keith v. Gelco Corp., 30,022 (La.App.2d Cir.12/10/97), 705 So.2d 244, employees sued their employer after they were injured in an auto accident while being driven to their homes from work at the end of the workday in a vehicle owned by their employer and driven by their supervisor. This court affirmed a dismissal on summary judgment of the employees’ personal injury claims on the premise that their exclusive remedy was in workers’ compensation because the accident occurred in the course and scope of their employment.[1]
Keith is also distinguishable. Although there was a factual dispute over whether the employees were paid for travel time on the date of the accident, it was undisputed that the plaintiffs were being driven in a company-owned vehicle by their supervisor, this was the customary means of transportation to and from the work sites, and the employer paid for the gas and maintenance of the vehicle. The method of transportation was an incident to the plaintiffs’ employment agreement. Johnson was not driving a company vehicle at the time of the accident.
In LeCroy v. Brand Scaffold Bldg., Inc., 95-1522 (La.App. 1st Cir.2/23/96), 672 *178 So.2d 181, writ denied, 96-1442 (La.9/27/96), 679 So.2d 1352, the First Circuit affirmed the finding of a WCJ that an auto accident occurred in the course and scope of employment when the employees received a per diem of $25 if they lived 100 miles or more from the job site. The court rejected the employer’s argument that the per diem was not a travel allowance but was a salary supplement to attract employees. The WCJ li-jhad noted that the per diem was classified as a nontaxable item, not as taxable compensation, by the employer, and that it was listed as a travel expense on the paycheck stubs.
LeCroy is contrasted by the mere fact that in the instant case, the per diem was provided to all temporary employees on the Mira project, and not just to those who lived a certain distance away.
The significance of a per diem was at issue in the context of a workers’ comp proceeding in Tarver v. Energy Drilling Co., 26,233 (La.App.2d Cir.10/26/94), 645 So.2d 796. This court stated that it was well settled that mere payment of these expenses without an express or implied agreement to furnish transportation did not place the employee within the course of his employment while going to and from work when such payments bore no relation to actual travel expenses and were intended only as an inducement to persuade persons to work at a particular job site.
The oil rig worker in Tarver was injured while being driven from the job site to company-provided housing facilities in a vehicle owned by a co-employee. The employee lived 210 miles from the job site and received a $15 per diem. The per diem did not include mileage and was not specified as travel expenses. This court noted that the employee was not required to stay in the company-owned housing. It was further noted that the employee had left the job site and was off duty because of a hand injury suffered at work earlier that day. This court affirmed the finding that the employee was not entitled to benefits for the injuries sustained in the auto accident because the accident occurred outside the course of employment.
114The employment status of an oilfield worker was the primary issue in White v. Frederick, 44,563 (La.App.2d Cir.8/19/09), 17 So.3d 1016, writ denied, 2009-2059 (La.11/25/09), 22 So.3d 168. The worker was involved in an auto accident in DeSoto Parish while driving to a restaurant in his personal vehicle after finishing his shift. This court found that summary judgment was appropriate because the worker was an independent' contractor. This court added that even assuming the worker was an employee, he was not in the course and scope of employment when the accident occurred. The worker was paid a day rate, rate for cell phone use, and mileage while “on the clock.” He was not reimbursed for food expenses. After his shift ended on the date of the accident, the worker had 12 hours until his next shift began. He then slept for a few hours in a trailer on the job site that he was allowed, but not required, to use. He was “off the clock” on his personal time between shifts and away from the work site when the accident occurred.
In Woolard v. Atkinson, supra, this court affirmed a summary judgment in favor of the employer because the employee was not acting in the course and scope of his employment when he was involved in an auto accident while commuting to his office from his home in his personal vehicle. As part of his duties, the employee traveled to meetings in cities around Louisiana. He received a salary plus $200 a month for work-related expenses. He received the $200 per month without submitting any documentation of his travel expenses, and he was not specifically reimbursed for his mileage. This *179 court recognized that the payment of a monthly travel allowance did not create a genuine issue of material fact as to whether the |15employee was in the course and scope of his employment since it was not established that he was on a mission ben-efitting his employer or performing a job duty at the time of the accident. The employee’s primary purpose in driving at the time of the accident was to transport himself from home to work, and his employer did not control his movements in that regard.
Johnson selected the motel because it was the cheapest place to stay that was nearby. Although Hayes told him about the motel, he did not suggest to Johnson that he stay there. Everfield testified that he chose the motel because Page and Johnson were already there and they said it was cheap.
Johnson agreed that someone from Systems told him that Systems would like for him to stay as close as he could to Mira. However, where he actually stayed was up to him. Not everyone working for Systems in Mira stayed at the motel. As noted by Everfield and Page, some Systems employees even lived in campers while working in Mira.
Johnson thought that it would have been okay with Systems if he had commuted from Mira to Tallulah. Page stated that Systems knew they sometimes drove to Tallulah. In fact, their supervisor allowed them to take off work so Johnson could drive Page to see his parole officer in Tallulah.
No Systems employee ever told Johnson that he could not share expenses with Ev-erfield and Page or placed restrictions on how they got to work. Their morning routine was up to them. The men checked in when they arrived at the job site and checked out when they left. They were not paid for travel time. They were not on call when their shift ended, and could 11fido as they pleased in their free time. Systems scheduled them to work at the same time since Johnson drove them to work.
Johnson was not on a work mission, but was merely commuting to work and not in the course and scope of his employment at the time of the accident. The payment of the per diem and the fact that Johnson used it for lodging and other expenses does not change the result. The payment of the per diem in this instance did not interest Systems in Johnson’s transportation to and from work. The per diem was offered by Systems as an inducement to recruit and retain temporary employees, and it was available to all temporary employees on the Mira project regardless of where they lived. Johnson made the economic decision to save on expenses and perhaps pocket some of the per diem by sharing lodging in Shreveport and not commuting to and from Tallulah on a regular basis. Johnson was not obligated to stay near Mira, even if he believed that Systems liked its temporary employees to lodge as close as possible to a job site.
For the foregoing reasons, we conclude that there is no genuine issue of material fact regarding whether Johnson was in the course and scope of his employment at the time of the accident. Systems was entitled to summary judgment as a matter of law. Because we reach this conclusion, it is unnecessary for this court to consider Systems’ alternative argument that Page’s exclusive remedy is in workers’ compensation if the accident arose out of and in the course of Johnson’s employment.
DECREE
At the cost of the Pages, the judgment is AFFIRMED.

. The court recognized the dual requirements of workers' compensation that the accident occur in the course of employment and arise out of the employment.