421 So.2d 262 (1982)
Bobby Venard SCHAEFFER
v.
Steve K. DUVALL and Vinson Detective Agency, Inc.
No. 13093.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1982.
Rehearing Denied November 19, 1982.
*263 Joel P. Loeffelholz, Jacobs, Loeffelholz & Trestman, New Orleans, for plaintiff-defendant in reconvention-appellant.
Clare V. Holden, Robert H. Sarpy, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant third party plaintiff-appellee.
Before BARRY, BYRNES and CIACCIO, JJ.
*264 BARRY, Judge.
Plaintiff Bobby Schaeffer appeals the dismissal of his lawsuit for personal injuries sustained from a gunshot in a tavern on Sunday, November 10, 1974 shortly after 9:00 a.m. Steve Duvall, co-defendant herein, an armed security guard employed by co-defendant Vinson Detective Agency, had completed an 11:00 p.m. to 7:00 a.m. shift and after waiting 45 minutes for a bus decided to walk home. Duvall passed a tavern across the street from his house and Percy Holloway, the owner, called to Duvall to go in as he had something to tell Duvall. Duvall entered the bar still wearing his Vinson uniform and a .38 caliber pistol on his hip. Shortly thereafter the plaintiff, Bobby Schaeffer, entered the bar. At this point versions of the incident differ.
Plaintiff testified he and Duvall got into an argument which "cooled down" and Schaeffer ordered a drink. Duvall, who was drinking a beer at the opposite end of the bar, walked behind Schaeffer "(a)nd Mr. Duvall say [sic], `What did you say?' and I (Schaeffer) turned off the stool and next thing I knew he pulled his pistol out with his right hand and he put  he changed hand [sic], he put the pistol in his left hand and he fired" from approximately 10 feet.
Defendants, on the other hand, contend Schaeffer entered the bar and directed extremely abusive language toward Duvall's old age and his uniform whereupon Duvall, before drinking any beer, decided to leave. Duvall testified as he walked past Schaeffer, Schaeffer lunged toward him grabbing for his gun. A struggle ensued and the gun discharged, striking Schaeffer in the abdomen.
Plaintiff sued Duvall, Vinson Detective Agency and Percy Holloway. Duvall reconvened against Schaeffer and Vinson third partied Duvall. The suit against Holloway was dismissed.
The Trial Judge rejected plaintiff's claim against Vinson reasoning that Duvall was on his way home and had entered the bar "purely for his own gratification and in contravention of the rules set down by his employer." The lower court found Duvall negligent because he violated rules governing private security guards prescribed by the New Orleans Police Department[1] and his negligence was a "cause in fact" of the altercation. However, adopting defendants' version of the facts, the Trial Judge concluded Schaeffer was also at fault and dismissed his suit and all incidental demands. The Reasons for Judgment do not address the question of Vinson's alleged negligent hiring and Article 2317 liability.
Plaintiff appeals urging Vinson's liability based 1) on vicarious liability for the negligent and/or intentional tort of its employee, Duvall, and 2) on strict liability for placing a dangerous instrumentality in the hands of its employee without adequate screening, training or follow-up. Duvall's negligence is not contested.

VICARIOUS LIABILITY
Vinson argues that since Duvall had departed his employment for more than two hours he clearly was not acting in the course and scope of his employment and there is no liability for the employee's torts. The security company also asserts, arguendo, if the employment relationship still existed after Duvall finished work, his deviation to the bar was in violation of Vinson's strict rules and for Duvall's own gratification which relieved Vinson of liability. Ruth v. Royal Indemnity Co., 83 So.2d 520 (La.App. 2d Cir.1955).
Vicarious liability in Louisiana charges the employer with responsibility for *265 his employee's misconduct if, at the time of the act, the employee is acting within the scope of his employment, i.e. "in the exercise of the functions in which ... employed." LSA-C.C. Art. 2320. The fact that an employee's conduct is in violation of the employer's express rules is not, of itself, conclusive on the issue of scope of employment, but depends on the particular facts and circumstances of each case. If the conduct is closely related in time, place and causation to his employment duties, the resultant harm is attributable to the employer's business which is liable for damages. Conduct motivated by purely personal considerations and extraneous to the employer's interest is not imputable to the employer. The purpose of imposing vicarious liability is not served when the conduct occurs after the employee has long "abandoned or completed the employment and engages in a frolic which is in no manner related to service of the master." Normand v. City of New Orleans, 363 So.2d 1220 at p. 1223 (La.App. 4th Cir.1978), writ denied 366 So.2d 573 (La.1979). See also LaBrane v. Lewis, 292 So.2d 216 (La.1974), Cain v. Doe, 378 So.2d 549 (La.App. 4th Cir.1979).
The trial court found Duvall entered the bar for his own gratification unrelated to the service of his employer, a conclusion we find clearly supported by the record. The evidence shows that Duvall completed his shift at 7:00 a.m. and waited approximately 45 minutes for a bus before walking home. Apparently the trip home took approximately one hour as the record shows the shooting occurred sometime after 9:00 a.m.[2] Therefore, the "time" of the incident was more than two hours after his employment duties ceased; the "place" of the occurrence was far removed from his work place; and the "causation" or motive for Duvall's presence in the barroom was purely personal and unrelated to his employment duties. Under these circumstances there is no legal justification to conclude that plaintiff's injuries were caused by Duvall's acting in the course and scope of employment and accordingly there is no vicarious liability against the employer, Vinson.

ARTICLE 2317 STRICT LIABILITY
Plaintiff also urges strict liability on the employer under LSA-C.C. Art. 2317[3] predicated on Vinson's deficient employment practices in screening, training and supervising its armed guards. Plaintiff asserts Vinson was negligent in its hiring and training practices which were "in fact the real gut reason that this incident occurred." He argues because Vinson placed a dangerous instrumentality in the hands of its employee it should be held to a higher duty of care and is responsible for this employee's actions whether or not the act occurred in the course and scope of the employment. Citing Loescher v. Parr, 324 So.2d 441 (La. 1975), Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971) and Canter v. Koehring Co., 283 So.2d 716 (La. 1973), he urges the basis of Vinson's fault is its "failure to prevent the person for whom he is responsible from causing such unreasonable risk of injuries to others." Plaintiff contends Vinson had an "extraordinary duty" to be certain Duvall went directly home with his firearm after leaving work.
Vinson maintains its employment practices at the time of the incident were competent and not in violation of any statutes or ordinances pertaining to private security companies. Vinson stresses, however, under our law and jurisprudence, its hiring and training practices are irrelevant because the alleged tort occurred long after its employee left work and was inside a tavern which is clearly beyond and unrelated to any employment function. Vinson submits in the alternative, if "strict liability" suggested by plaintiff is appropriate, it takes the position that plaintiff's conduct *266 amounted to contributory negligence or "victim fault" barring his recovery. Dorry v. LaFleur, 399 So.2d 559 (La.1981), Stewart v. Sam Wallace Indus. Co., 409 So.2d 335 (La.App. 1st Cir.1981), writ denied 413 So.2d 497 (La.1982). Admittedly, Vinson hires personnel with minimal qualifications, an apparent custom in the security business. Company training of its guards, including use of a gun, is nominal. Compounding this is the lack of governmental supervision at any level setting forth minimum criteria for the hiring, training and supervision of "special officers" allowed to carry firearms.[4]
Loescher, Langlois and Canter, supra, relied on by plaintiff, are inapposite to these facts as those cases are based on a finding that the person/object causing the tort was, at the time of occurrence, under the care, supervision or control of the person or entity sought to be held responsible. At the time of this incident the employee was far removed from the control of his employer and under our present jurisprudence strict liability is not applicable.
However, even if strict liability were applicable, we feel it is negated by plaintiff's conduct which was a substantial cause, if not the provocation, of the harm-producing incident. Stewart, supra. Whether the conduct be labeled "contributory negligence" or "victim fault" is of no moment since the cause here is more than sufficient to be a defense to Article 2317 liability.
The Trial Judge found "the plaintiff Bobby Schaeffer is at fault also in that he grabbed the defendant Duvall and attempted to wrest the gun from the holster and that the injuries were sustained in fighting for control of the gun." On appeal, plaintiff maintains this finding was erroneous, that Duvall walked behind him, pulled out his gun and shot plaintiff from a distance of 10 feet. Plaintiff relies on the testimony of the investigating officer (who related statements made at the scene to him by the now deceased Percy Holloway) and Dr. Roy O'Connell, plaintiff's attending surgeon, who opined the gun was fired from more than two feet. Defendants rest on the testimony of Duvall, Holloway's deposition and his testimony at the criminal trial.[5]
Dr. O'Connell candidly admitted he was not a ballistics expert and stressed his opinion on how far away the shot was fired was founded on an assumption the revolver was a "well-functioning .38." He pointed out that no one mentioned the ballistics of this particular gun: the mass or speed of this missile. He also conceded if the bullet passed through several layers of clothing it could affect his conclusions. Based on this testimony we do not find Dr. O'Connell's opinion persuasive to plaintiff's cause.
This case involved findings of facts based upon conflicting testimony of witnesses. We are ever cognizant that on appellate review factual determinations of the Trial Judge are not to be disturbed in the absence of manifest error. This rule is particularly applicable here because the testimony is difficult, if not impossible, to reconcile. The Trial Judge's responsibility is to evaluate the credibility of witnesses, Pounds v. Ecoff Trucking, Inc., 365 So.2d 934 (La.App. 4th Cir.1978), and we find no basis to disagree with his conclusions.
Accordingly, the judgment of the trial court is affirmed with plaintiff assessed all costs.
AFFIRMED.
NOTES
[1] II. E. Policy on use of firearms

* * * * * *
5. It shall be unlawful for a special officer (unless so assigned) to carry a dangerous weapon, concealed or otherwise, into any public hall, tavern, picnic grounds, place for shows or exhibitions or house or other place of public entertainment or amusement.
VI. Restrictions
C. A special officer cannot leave an assignment during the hours detailed. After the detail is completed, his deputized power of arrest will cease and he must go directly home and remove his uniform and weapon. He must not deviate from a direct route from the one place to the other.
[2] The police received a call at 9:29 a.m., minutes after the accident.
[3] LSA-C.C. Art. 2317 provides in part:

"We are responsible not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable or of things which we have in our custody ...."
[4] Sergeant Ted Brister of the New Orleans Police Department, plaintiff's expert, testified there are no legal requirements imposed on private security companies with regard to hiring, training or following of armed guards. And, as far as he knows, the training, etc., was left completely to the individual security agency.
[5] Duvall was found not guilty of aggravated battery in the Criminal District Court for the Parish of Orleans.