553 So.2d 1106 (1989)
Deborah Roger, Wife of/and Robert ROGER, Sr.
v.
Korey J. DUFRENE, State Farm Mutual Automobile Insurance Company, and Prudential Property and Casualty Insurance Company, et al.
No. 89-CA-0274.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 1989.
Rehearing Denied January 17, 1990.
Sidney D. Torres, III, Gregory J. Noto, Chalmette, for plaintiffs, appellants.
Edward P. Lobman, Jeanne Lazarre Billings, Lobman, Carnahan and Batt, Metairie, for defendant, appellee State Farm Mut. Auto. Ins. Co.
G. Frederick Seemann, Dean, Lomenick & Seemann, Lafayette, and Harvey L. Strayhan, Sessions, Fishman, Boisfontaine, Nathan, Winn, Butler & Barkley, New Orleans, for defendant, appellee Crewboats, Inc.
Before BARRY, BYRNES and PLOTKIN, JJ.
BARRY, Judge.
On December 11, 1984 Mr. and Mrs. Robert Roger were involved in a vehicular accident with a truck owned by Korey Dufrene. The Rogers sued Dufrene and his insurer, State Farm Mutual Automobile Insurance Co., and Rogers' uninsured motorist carrier, Prudential Property & Casualty Co. State Farm answered; Prudential answered and third partied Dufrene.
The Rogers' first supplemental petition alleged Dufrene was acting in the course and scope of his employment with Crewboats, Inc. at the time of the accident, added Frank Hall of Louisiana, Inc. as the *1107 general liability insurer of Crewboats and State Farm as the company's automobile liability insurer. Rogers' second supplemental petition substituted Penn-America Insurance Company as general liability insurer of Crewboats.
After a settlement the Rogers dismissed with prejudice Dufrene and State Farm as his insurer. They reserved their rights against the others including Prudential, Penn-America and State Farm as the automobile liability insurer of Crewboats.
Penn-America answered the first and second Rogers' petitions and filed exceptions of no cause and/or right of action. Alternatively (if found liable) Penn-America requested an offset because of the compromise. State Farm, Crewboats' insurer, answered and third partied Mr. Roger and Prudential for contribution if it is held responsible for Mrs. Roger's injuries. Penn-America filed a cross claim against Mr. Roger and Prudential. As Mr. Roger's insurer, Prudential answered State Farm's third party petition and Penn-America's cross claim. Mr. Roger answered Penn-America's cross claim and State Farm's third party petition.
The Rogers' third supplemental petition added Crewboats as a defendant. Crewboats and State Farm as its insurer answered. Crewboats' motion for summary judgment was granted. The trial court found State Farm's summary judgment motion as insurer of Crewboats to be moot and declared that the Rogers' claims against State Farm and Penn-America as insurers of Crewboats, Inc. should be dismissed. The Rogers appeal both judgments.
The Rogers specify two errors:
1) Granting Crewboats' motion for summary judgment based upon a finding that Dufrene was not acting within the course and scope of his employment at the time of the accident;
2) Dismissing the Rogers' suit against State Farm and Penn-America, insurers of Crewboats, Inc. based upon the summary judgment.

DOCUMENTATION
Crewboats based its motion for summary judgment on the allegation that Dufrene was not in the course and scope of his employment at the time of the accident. Attached is the deposition of Dufrene and the affidavit of Fred Jirovec, Vice President of Crewboats.
Jirovec declared that Dufrene was employed on December 11, 1984 by Crewboats as a boat captain. Jirovec claimed that Dufrene went to work on that day at approximately 4:00 p.m. and his job was to captain the motor vessel Harper's Ferry which was to leave the Chalmette dock at approximately 4:00 p.m. Jirovec said Dufrene was not considered to be at work until he boarded the boat.
Jirovec stated the company's standing rule was that all employees had to check with their superior before leaving the job area. He said if Dufrene left the area for lunch without permission it would have been a violation of company policy. Any mission Dufrene had away from the shipyard was personal and not condoned by Crewboats, according to Jirovec.
Dufrene stated he was employed by Crewboats as a boat captain and arrived at the Paris Road yard about noon on December 11, 1984. Fuel had accidentally gotten into the water tank and the boat had to be refueled. Dufrene testified that about 12:45 p.m. he drove his pickup to a restaurant since he had to wait for the boat.
Dufrene stated that he was to be paid for a half day no matter what time he left on the vessel. His salary was calculated on a daily basis. Dufrene said he did not have a designated lunch time because food was available on the boat. He sometimes worked seven days on and seven days off and was paid whether he was eating, sleeping or working. He said on the day of the accident he was "on the clock" while he waited for the boat. The accident occurred after he left the restaurant on his return to Crewboats' yard.
Dufrene stated that he wrote in his daily company log that he arrived for work around noon. Dufrene claimed the time he spent eating lunch would count toward his *1108 regular work day. He said he was not certain if he told any Crewboats' employee that he was going to lunch. Dufrene said he left the dock about 5:00 p.m.
State Farm's motion for summary judgment is based on its four policies covering Crewboats which allegedly exclude any employee's automobile from coverage. In its statement of uncontested facts, State Farm declares that Dufrene was driving his truck which was covered by a separate State Farm policy. Crewboats' four vehicles were insured on State Farm's automobile policy. On the day of the accident State Farm had available an employer's non-ownership liability endorsement not contained in Crewboats' four policies.
State Farm attached to its motion the four policies, its available non-ownership liability endorsement, and the depositions of Dufrene and Robert Eisenbraun, its agent who took Crewboats' applications. Eisenbraun stated that Crewboats had not included employer's non-ownership liability coverage in its policies.
Crewboats filed the affidavit of its president, Patrick S. Pescay, who stated he did not inform State Farm's agent that company employees would not use their private vehicles on company business. He said certain employees were allowed to use their own vehicles for company business including daily trips to the post office. Pescay instructed State Farm's agent to provide full coverage for the company under all circumstances. He claimed he was never informed coverage was not provided to Crewboats' employees when they used their vehicles for business.
The Rogers filed Mrs. Roger's affidavit concerning the accident and Dufrene's statements to her immediately thereafter. Many of her statements constitute hearsay and would not be admissible at trial.

THE LAW
Summary judgment is a drastic remedy and should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La.C.C.P. Art. 966; Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980).
The party moving for summary judgment must affirmatively and clearly prove the absence of a genuine issue of material fact. Any doubt must be resolved against summary judgment and in favor of a trial on the merits. Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company, 427 So.2d 1152 (La. 1983).
The movant's pleadings, affidavits and documents must be scrutinized closely; those of the opponent are to be indulgently treated. Barham & Churchill v. Campbell & Associates, 503 So.2d 576 (La.App. 4th Cir.1987), writ denied 503 So.2d 1018 (La.1987). Supporting and opposing affidavits must be made on personal knowledge and set forth facts that would be admissible.
La.C.C.P. Art. 967.
An employer is not vicariously liable for the acts of his employee under the doctrine of respondeat superior unless the tort was committed in the course and scope of employment or when the servant is in the exercise of the functions in which he is employed. La.C.C. Art. 2320; Weysham v. New Orleans Public Service, Inc., 385 So.2d 19 (La.App. 4th Cir.1980), writ denied 392 So.2d 690 (La.1980).
Generally, employees are not in the course and scope of their employment when going to and from work and the employer is not liable for negligent acts. Boudreaux v. Yancey, 319 So.2d 806 (La. App. 1st Cir.1975); Wills v. Correge, 148 So.2d 822 (La.App. 4th Cir.1963), writ refused 244 La. 147, 150 So.2d 768 (1963). An employee's violation of an employer's rule is not conclusive as to the issue. Cain v. Doe, 378 So.2d 549 (La.App. 4th Cir. 1979).
When an employer pays for gasoline used for employment connected trips and benefits from the journey, the employee is deemed to be within the course and scope of employment. Austen v. Sherwood, 446 *1109 So.2d 274 (La.1983). The court must consider the facts and circumstances of each case and whether the employee's conduct is closely related in time, place, and causation to his employment. Daniels v. Conn, 382 So.2d 945 (La.1980); Schaeffer v. Duvall, 421 So.2d 262 (La.App. 4th Cir.1982), writ denied 427 So.2d 1209 (La. 1983).
An employer is not liable for injuries caused by an employee on a trip to obtain a meal unless there is a showing that the interests of the employer were being served. Whittington v. Western Union Telegraph Company, 1 So.2d 327 (La.App. 2d Cir.1941). Whether a trip will benefit the employer or has a business purpose is crucial. Torres v. United States Fidelity & Guaranty Insurance Company, 499 So.2d 1293 (La.App. 4th Cir.1986).
Whether a party is liable for the act of a tortfeasor on the basis that the tortfeasor was the party's employee in the course and scope of employment depends upon the proof and assessment of several factors, including payment of wages by the employer, the employer's power of control, the employee's duty to perform the particular act, the time, place and purpose of the act in relation to service of the employer, the relationship between the employee's act and the employer's business, the benefits received by teh [sic] employer from the act, the motivation of the employee for performing the act, and the reasonable expectation of the employer that the employee would perform the act.
* * * * * *
Determination of the course and scope of employment is largely based on policy. The risks which are generated by an employee's activities while serving his employer's interests are properly allocated to the employer as a cost of engaging in the enterprise. However, when the party (the alleged employer) upon whom vicarious liability is sought to be imposed had only a marginal relationship with the act which generated the risk and did not benefit by it, the purpose of the policy falls, and the responsibility for preventing the risk is solely upon the tortfeasor who created the risk while performing the act.
Reed v. House of Decor, Inc. 468 So.2d 1159, 1161-62 (La.1985). See also Gordon v. Commercial Insurance Company, 503 So.2d 190 (La.App. 4th Cir.1987), writ denied 506 So.2d 1227 (La.1987).

ANALYSIS
Some facts are undisputed. On December 11, 1984 Dufrene, an employee of Crewboats, reported to his employer's Paris Road office at noon to pilot the crewboat Harper's Ferry to Breton Sound. He made an entry in his daily log when he arrived. The boat was not ready to leave and Dufrene was on standby. Dufrene left the company area in his pickup to eat lunch and did not inform anyone that he was leaving. On his return to work the automobile accident occurred. Dufrene did not leave the dock until 4-5 p.m.
According to the affidavit of Fred Jirovec, Vice President of Crewboats, Dufrene's job was to operate the vessel and in his opinion was not in the course and scope of employment until he got aboard the vessel. Jirovec claimed Dufrene violated a company rule when he left the company area without permission. His position was that Dufrene's workday did not begin until he boarded the vessel. Jirovec said Crewboats provided meals to its employees while they were working and did not pay for Dufrene's meal off of the premises.
Crewboats argues it is entitled to summary judgment and relies on Puccio v. Finch, 454 So.2d 272 (La.App. 4th Cir. 1984), writ denied 458 So.2d 478 (La.1984). Finch was captain of a vessel docked in Venice, Louisiana. He was paid to work between 6:00 a.m. and 6:00 p.m. and was on call twenty-four hours a day. The company policy was for an employee to remain on the boat except for an emergency or occasionally to eat. Food was available on the vessel, but Finch and another crew member, in violation of the employer's rules, drove to a lounge where they drank beer for several hours. They were going back to the vessel when an accident occurred.
*1110 This Court noted that although the accident occurred during Finch's working hours, the collision happened away from work, and Finch's reason for leaving the vessel was not related to his employment. The circumstances leading up to the accident were not in dispute and summary judgment was properly granted.
The Rogers argue that there is a disputed issue of fact as to whether Dufrene was to be paid from the time he logged in at work or when he went aboard the vessel. Dufrene stated he was to be paid for half a day (beginning at noon) and the time he spent eating lunch (after he logged in) was part of his work day. Factually, Dufrene reported to Crewboats' office at noon and left on the vessel between 4-5 p.m. Whether he was within the course and scope of employment during the standby time including his lunch requires inferences to be drawn from the facts and additional information as to company policy and practices.
The Rogers rely on Michaleski v. Western Preferred Casualty Company, 472 So.2d 18 (La.1985), where an employee, Leger, was a motorman at an oilwell. On August 14 Leger and other employees finished their work between 6-8 p.m. Leger had been brought to work by the employer's truck and had to retrieve his car. It took him most of the night to return to the well site. His crew shift started the next morning at 6:00 a.m. Leger was working a twelve hour shift, seven days on and seven days off. The time sheet for August 15 indicated that he worked twelve hours from 6:00 a.m. to 6:00 p.m. During a twelve hour shift employees "ate on the run".
Leger received an hourly wage plus $12.00 a day for food and gasoline. The crew stayed at the rig in a trailer which had a kitchen where the employees cooked. On August 15 Leger and another worker drove five or six miles to eat and were returning to the rig site when the accident occurred.
In Michaleski the Supreme Court held that an oil company employee working seven days on with living quarters and a food and gas allowance is within the course of his employment when he is returning to the workplace after eating. All of the workers had to leave the rig site to purchase food to cook. Buying food was an activity arising out of the nature of the employment and the employer anticipated the necessity of temporary absences because it compensated the employees with a per diem for food and gas expenses. Summary judgment was reversed. Three justices concurred; two noted that summary judgment was not appropriate to determine whether the employee was in the course and scope of his employment.
Here the trial court relied on Puccio v. Finch to conclude that "Mr. Dufrene was on a personal mission when he left the employer's premises, in his own vehicle, to get some lunch after being told that his departure would be delayed several hours."
Our case is distinguishable from Puccio, where food was available and the captain left the docked vessel to drink beer in violation of his employer's rules. The facts were not in dispute and there was sufficient information relating to the company's rules and the employee's conduct so that the matter was ripe for summary judgment.
Such is not the case here. The fact that Dufrene reported to work at noon and logged in is not disputed. His vessel was unavailable and apparently its galley was not functioning. Whether the company was expected to provide meals to an employee who had to standby for several hours and what provision had been made for food was not established. The alleged rule that an employee had to ask permission to leave the premises was established solely by the vice president's affidavit. Violation of such a rule (if it existed) would not be determinative of whether Dufrene was acting within the scope of his employment.
Allegations of material fact by one party cannot be accepted as true if they are denied by the other party. New South Advertising, Ltd. v. Krock-O-Cheese, Inc., 486 So.2d 1115 (La.App. 2d Cir.1986). If evidence is subject to conflicting interpretations or reasonable men might differ as to *1111 its significance, summary judgment is improper. Jackson v. State Teachers' Retirement System of Louisiana, 407 So.2d 416 (La.App. 1st Cir. 1981). Weighing conflicting testimony or making credibility evaluations does not support a summary judgment. Urban Management Corporation v. Burns, 427 So.2d 1310 (La.App. 2d Cir. 1983). Inferences to be drawn from underlying facts in a deposition and affidavit must be viewed in the light most favorable to the party opposing summary judgment. Burke v. Occidental Life Insurance Co. of California, 427 So.2d 1165 (La.1983).
Adhering to the standard that any doubt must be resolved against the granting of summary judgment and in favor of trial on the merits, we conclude the trial court erred. Whether Dufrene was in the course and scope of his employment at the time of the accident presents a genuine issue of material fact which cannot be resolved by summary judgment.
The summary judgment in favor of Crewboats, Inc. is reversed.
The trial court relied on Crewboats' summary judgment to conclude that the motion for summary judgment by State Farm (insurer for Crewboats) was moot, and Rogers' claims against State Farm and Penn-America as insurers of Crewboats should be dismissed. The court did not specifically grant or deny the motion and simply declared the claims "should be" dismissed. We remand for the trial court to rule on the merits of that motion.
REVERSED IN PART; REMANDED IN PART.