JjSCHOTT, Chief Judge.
This case arose out of an automobile accident between a 1987 2-door Jaguar automo *263 bile operated by Joseph W. Thomas, owned by Paretti Imports, and insured by Zurich-American Insurance Group, and a 1980 Ford truck operated by Susan Ellison and allegedly insured by State Farm Mutual Automobile Insurance Company. State Farm has appealed from the judgment of the trial court in favor of Zurich and Paretti allocating 75% of the fault for the accident to Ellison and 10% to Thomas. Zurich has answered the appeal. The issues raised by State Farm are whether these allocations of fault are manifestly erroneous and whether the evidence is sufficient to establish that State Farm was Ellison’s insurer. As to Zurich’s answer to the appeal the issue is whether a liability insurer can settle a claim with an injured party and subsequently recover the settlement amount from the injured party’s insurer.
Paretti loaned the Jaguar to Thomas while Thomas’ own Jaguar was being repaired. Zurich provided Paretti with collision insurance on the Jaguar driven by Thomas as well as liability insurance for Thomas as Paretti’s permissive driver. After the accident Zurich paid Paretti $16,785.97 ^representing the amount of damage to the Jaguar less Paret-ti’s five hundred dollar deductible. Ellison and her father had filed an independent suit against Thomas for personal injuries and damage to the truck, and Zurich, as Thomas’ liability insurer, settled this claim for $9,901.69. In the present suit Zurich sued as Paretti’s subrogee for the amount it paid for the damage to the Jaguar and Paretti sued for its deductible; Zurich also sued for the amount it paid Ellison in settlement. Made defendants were Thomas, Ellison, State Farm, and the City of New Orleans because the traffic signal was allegedly defective. Ellison was never served with the petition and made no appearance.
The trial court rendered judgment on the damages to the Jaguar in favor of Paretti and Zurich allocating fault of 10% against Thomas, 15% against the City, and 75% against State Farm. On Zurich’s claim for the amount it paid Ellison the trial court rendered judgment in favor of Zurich but limited its recovery to 10% against Thomas and 15% against the City. Only State Farm has appealed contesting the fault allocation against it of 75% as well as the determination of its insurance coverage on Ellison. However, Zurich answered the appeal seeking to recover from State Farm 75% of the amount it paid Ellison and her father in settlement of their claim against Thomas; alternatively it seeks to recover this 75% from Thomas and the city.
The accident happened at the intersection of Bullard Road and the access road to the entrance ramp of 1-10 West in New Orleans. Bullard runs north-south and consists of generally two lanes in each direction divided by a median. I — 10 is elevated at Bullard crossing over at a right angle. Thomas was headed north on Bullard intending to enter I — 10 West by way of the access road on the west side of Bullard. This would require him to make a left turn from his side of Bullard and to cross the south-bound lanes. As he approached the turn he entered a third turning lane next to the median and was confronted Uwith an electric semaphore signal flashing a yellow light.
In the meantime Ellison was proceeding south on Bullard in her right or west lane of traffic. As she approached the point where Thomas would cross, the electric semaphore signal was flashing a yellow light for her also. With her truck she struck Thomas’ Jaguar as he was crossing headed for the access road. The impact on the Jaguar was on the back of the front wheel and on the right door.
According to Thomas he stopped for the flashing light and saw Ellison’s truck approaching at a distance of about two hundred feet. With his left turning light on he turned and started across the highway proceeding cautiously at a bit over ten miles per hour. As he was crossing the second or west lane of Bullard his automobile was struck. He assumed that the light was flashing a red light for Ellison and that she would yield. He was shocked when she hit him. He did not hear a horn or brakes screeching before the collision.
According to Ellison as she approached the accident scene she was traveling at about thirty miles per hour but “yielded” as she came upon the signal light flashing yellow. She saw a car making a left turn toward the
*264 1-10 access road, she slowed to about fifteen miles per hour, and she accelerated after the car passed. Suddenly a Jaguar pulled in her path. She hit her brakes and blew her horn, but could not avoid the collision. She thought the Jaguar was speeding because she had not seen it before.
A city traffic engineer testified that this light was programmed to flash yellow for both directions in the event of a conflict among the lights at the intersection. The all yellow flashing was the state’s recommendation, but the normal recommendation for this intersection would be a yellow light for south bound Bullard and red for vehicles turning from the north bound side.
In reasons for judgment the trial judge found 75% of the fault on Ellison |4because she failed to see Thomas “making a left turn until immediately prior to impact notwithstanding the fact that he was almost through the intersection after having made a left turn.” He based the allocation of 10% of the fault to Thomas “because the duty placed upon a motorist making a left turn is to make sure it can be done without obstructing oncoming traffic.” Finally he found the City to be 15% liable because of its failure to maintain the lights at this intersection.
Since the City did not take an appeal from the judgment we accept the assignment to it of 15% of the fault. As to the remaining allocations between Thomas and Ellison we have concluded that the trial court erred in law and in fact by failing to find that the drivers were equally at fault.
LSA-R.S. 32:234 provides that a driver confronted with a flashing signal may proceed through or past such signal only with caution. If either driver had complied with this statute the accident would not have happened. Since they both violated the statute by failing to exercise caution they were equally at fault. In Thomas’ case he saw Ellison approaching when she was but two hundred feet away. At this point Thomas was stopped, preparing to turn. He thought she would yield and took a chance that he could get across safely. This can hardly be said to constitute the exercise of caution. He proceeded slowly, but this proved to be his undoing. He placed himself in Ellison’s path in the hope she would see him and avoid striking him. The trial court’s allocation of only 10% of the fault to Thomas is clearly wrong. He was equally at fault with Ellison by violating the same law she did.
State Farm’s second assignment of error is directed to the trial court’s finding that it provided liability coverage to Ellison. Zurich alleged that State Farm provided the insurance; State Farm denied this allegation and called for strict proof. State Farm argues “there was absolutely nothing in evidence to ifishow a connexity between Susan Ellison and State Farm.” If this were so State Farm’s assignment would have merit in accordance with Barber v. West, 394 So.2d 779 (La.App. 4th Cir.1981). But State Farm overlooks the police report which was placed in evidence by stipulation and which contains an entry that Ellison was insured by State Farm giving the policy number and the policy expiration date.
In answer to the appeal Zurich seeks to recover back from State Farm as Ellison’s and her father’s insurer the amount it paid to settle their claim against it. The settlement was made after a suit was filed, and the suit was dismissed after the settlement. The only conceivable theory under which Zurich could assert this claim is in the capacity of a subrogee. Subrogation is the substitution of one person to the rights of another. LSA-C.C. art. 1825. Ellison and her father had no rights to assert against their liability insurer, State Farm, and could not convey any to Zurich. Zurich also seeks to have Ellison’s fault allocated to the remaining defendants, but the liability of these defendants must be reduced by the fault allocated to Ellison. Since we have concluded that Ellison’s fault is less than what the trial court allocated the judgment for the $9,901.69 is payable to the extent of 15% by the City and 42.5% by Thomas.
Accordingly, the judgment of the trial court is amended only to the extent of allocating fault to appellee Joseph W. Thomas and appellant State Farm Mutual Insurance *265 Company in the amount of forty-two and one-half (42.5%) percent to each.

AMENDED AND AFFIRMED.