CARTER, C.J.
|sThese consolidated matters arose out of an April 29, 1996 rear-end collision between Stephen Savoy and a drunk driver, John Harris. Shortly after midnight and immediately before the accident on that Sunday night, Harris had been drinking. He was driving a van owned by his employer, Reliable ' Amusement Company (Reliable), and allegedly insured by Sphere Drake Insurance, PLC (Sphere Drake). Harris was employed as a route man whose job was to service and provide money for video poker machines at various locations. There was no evidence that Harris was on duty while he was drinking immediately prior to the accident.
Savoy, who was driving home from a friend’s house, was injured when he slowed to make a left turn and was rear-ended by Harris. Harris was issued citations for careless operation and second-offense DWI; his blood alcohol level was determined to be 0.193. According to Savoy, Harris allegedly told one of the investigating police officers that he was on his. way to another job when the accident occurred. However, Reliable’s general manager, Craig Tullos, testified that: (1) Harris was not on duty that night; (2) Reliable’s route men did not respond to service calls after 7:00 p.m.; (3) drinking alcohol while on duty was strictly prohibited; and (4) Harris was not authorized to drive the company van when he was not on duty. According to Tullos, Harris was scheduled to work the next morning, and that is why he had possession of the van and keys. Additionally, Tullos claimed that $15,000.00 of Reliable’s cash was supposed to be in the van for Harris’s use while running his route, but the cash was missing.
Savoy filed suit for personal injury damages against Harris, Reliable, and Reliable’s excess general and automobile liabil *1078 ity insurer, Sphere |,¡Drake.[1] Sphere Drake denied coverage, claiming that it had never received Reliable’s premiums, an insurance policy was never issued, and coverage was never bound. Reliable filed a separate suit against its insurance agents, Tom Cooksey and Southern Insurance Company (Tom Cooksey/Southern), insurance brokers, Paul Cooksey and Braxton Insurance Brokers, Inc. (Paul Co-oksey/Braxton), Tom Cooksey/Southern’s insurer, United National Insurance Company (United National), and Sphere Drake.[2] Thereafter, the parties were realigned pursuant to a Mary-Carter agreement wherein Sphere Drake was dismissed from Savoy’s suit, but remained in the litigation against Reliable.
The cases were consolidated for an April 20, 2007 trial in the Eighteenth Judicial District Court. The trial court immediately ruled in favor of Savoy, but found that Harris was personally liable for Savoy’s damages because Harris was not acting within the course and scope of his employment with Reliable at the time of the accident. The trial court further ruled that Sphere Drake had provided excess automobile liability insurance coverage to Reliable, implicitly ruling that Harris had permission to operate Reliable’s van, and that therefore, Sphere Drake was responsible for Reliable’s defense expenses and costs that had exceeded the self-insured retention limit. Finally, the trial court dismissed all of the remaining claims, |,^including those against Reliable’s agent, Tom Cooksey/Southern, and its insurer, United National.

Contentions of the Parties

Savoy and Sphere Drake filed separate appeals from the trial court’s judgment. Both appellants argue that the trial court committed manifest error in its ruling on the course and scope issue. Additionally, Sphere Drake argues that the trial court manifestly erred in finding excess liability insurance coverage when Sphere Drake never received a premium and never issued an insurance policy.[3] Sphere Drake also argues that the trial court erred in failing to recognize that the agent, Tom Cooksey/Southern was responsible for Reliable’s damages because it failed to procure the agreed upon insurance coverage. Neither Reliable nor Tom Cooksey/South-ern appealed or answered the appeal, but both of those defendants maintain that the trial court correct!y found that Reliable was not vicariously liable for Harris’s negligence. They also maintain that the trial court’s finding that Sphere Drake insured Reliable was correct, considering the fact that Reliable had paid all of the premiums to its agent, Tom Cooksey/Southern, who in turn, sent the premiums to the broker for Sphere Drake, Paul Cooksey/Braxton. Further, the agent issued certificates of insurance and insurance cards to Reliable, indicating that Sphere Drake was Reliable’s automobile liability insurer in 1996.

Course and Scope of Employment

It is well settled in Louisiana that the question of whether an employee’s tortious conduct was sufficiently employment-related is a mixed ^question of fact and law, and the trial court’s resolution of that question is entitled to great deference *1079 on review by the court of appeal under the manifest error standard. Russell v. Noullet, 98-0816 (La.12/1/98), 721 So.2d 868, 871. The course and scope of employment inquiry requires the trier of fact to determine whether the employee’s tortious conduct was “so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer’s business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer’s interests.” Id. (Quoting LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974).) Further, a presumption exists that an employee who is involved in an accident while operating his employer’s vehicle is within the course and scope of his employment. This presumption can be rebutted by clear and convincing evidence. Moran v. Canal Indem. Ins. Co., 387 So.2d 1243, 1244 (La.App. 1 Cir. 1980); Williams v. Morgan, 356 So.2d 1029, 1030 (La.App. 1 Cir.1977). However, just being in a company vehicle does not give rise to vicarious liability where the employee’s trip is personal. Keen v. Pel State Oil Co., Inc., 332 So.2d 286, 291 (La.App. 2 Cir.), cert. denied, 333 So.2d 234 (La.1976) (on rehearing).
We agree with the trial court’s conclusion that clearly, Harris was not acting in any manner that was employment-related when he became extremely intoxicated on his personal time and then, at a very late hour in the night, drove his employer’s vehicle. The trial court was presented with conflicting evidence about whether Harris was driving to a job location at the time of the accident,[4] but obviously resolved that conflict in favor of 17ReliabIe, whose manager clearly testified that Harris was not on duty when the accident occurred shortly after midnight. There was absolutely no evidence that Harris was driving within the geographical limits of his route at the time of the accident or that he became intoxicated while on his work route. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). After a thorough review and evaluation of the entire record, we are convinced that the trial court’s conclusion that Harris was not acting within the course and scope of his employment is correct, given Harris’s independent and personal decision to socialize, drink, and drive under the influence of alcohol while in his employer’s vehicle. See Schaeffer v. Duvall, 421 So.2d 262, 265 (La.App. 4 Cir.1982), writ denied, 427 So.2d 1209 (La.1983).

Insurance Coverage

Likewise, after a careful review and evaluation of the record, we are unable to say that the trial court was clearly wrong in its factual conclusion that Reliable had excess automobile liability insurance coverage through Sphere Drake at the time of this accident. In a suit based on an insurance policy, the insured bears the burden of proving the existence of the policy and coverage. The insurer, however, bears the burden of showing policy limits or exclusions. Tunstall v. Stierwald, 01-1765 (La.2/26/02), 809 So.2d 916, 921. The record reasonably supports the conclusion that Reliable paid premiums to Tom Cooksey/Southern to renew its excess liability insurance for 1996, in addition to several other lines of insurance, through a broker, Paul Cooksey/Braxton, who then procured the insurance through the same excess insurer, Sphere Drake, that they had previously used. The Rrecord also *1080 supports the finding that Tom Cook-sey/Southern exercised reasonable diligence in acquiring the coverage requested and paid for by Reliable, passed the premium for the insurance to the broker (less its commission), and then issued insurance cards and certificates of insurance with a policy number provided by the broker.[5]
Although the evidence reveals that Sphere Drake had decided to terminate Reliable’s program for all insurance at the end of 1996, the evidence clearly shows that Sphere Drake agreed to renew Reliable’s liability coverage during 1996 through a “slip-line” quoting process that Paul Cooksey/Braxton and Sphere Drake had customarily used for several years when dealing with Reliable’s insurance coverage. Paul Cooksey/Braxton consistently assured Tom Cooksey/Southern and Reliable that the coverage was bound and promised the future production of the actual policy. There is absolutely no evidence in the record that Reliable was ever notified of any intention on the part of Sphere Drake not to renew the coverage or that the coverage was cancelled for nonpayment of premiums. Thus, even though Paul Cooksey/Braxton admitted that the renewal policy was not actually written and the premiums for the renewal were never forwarded to Sphere Drake, the evidence in the record reasonably and sufficiently supports a finding that Reliable’s coverage existed through Sphere Drake, and coverage was bound for 1996 by the slipline quoting process that outlined the terms, provisions, and costs of the |3coverage. Sphere Drake failed to produce proof of nonrenewal, cancellation, limits, or exclusions from coverage. Additionally, the evidence sufficiently establishes that Reliable was reasonable in assuming that it had paid for and received the same type of insurance that it had previously obtained even though the actual policy was never produced by the broker.[6]
It is well settled that the trier of fact actually hearing and observing the witnesses’ testimony is in a better position to evaluate credibility than a reviewing court. See Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882-883 (La.1993); Rosell, 549 So.2d at 844-845. Therefore, based on the unique facts of this case and even in the absence of the actual policy issued by Sphere Drake, we agree with the trial court’s factual finding that Sphere Drake provided liability insurance coverage to Reliable for the van operated by Harris. Cf. Ledet v. National Car Rental System, Inc., 96-1270 (La.App. 3 Cir. 6/4/97), 694 So.2d 1236, 1239; Zurich-American Ins. Group v. Ellison, 640 So.2d 262, 264 (La.App. 4 Cir.1993). Thus, Sphere Drake is responsible for Reliable’s defense costs and expenses in excess of the self-insured retention limit.

*1081
Conclusion

We affirm the judgment of the trial court in its entirety and assess costs equally between 1st Appellant, Sphere Drake Insurance, PLC and 2nd Appellant, Stephen Savoy. We issue this memorandum opinion in accordance with Uniform Rules — Courts of Appeal, Rule 2-16.1B.
AFFIRMED.
DOWNING, J., dissents and assigns reasons.

. Sphere Drake was substituted for Southern Insurance Company as the alleged insurer for Reliable.

. Throughout this opinion, we simply refer to Reliable (Harris's employer) although there are several other companies in the Reliable group that joined in the separate suit against the insurance agents, broker, and insurance companies. Paul Cooksey/Braxton never responded to Reliable's petition.

. Sphere Drake does not question the trial court’s finding of Harris’s implied permission to operate Reliable's van.

. Savoy testified that he overheard Harris telling one of the investigating police officers that he was on his way to a job. Neither Harris nor any police officer testified at trial.

. Although not always an indication of valid insurance, possession of an insurance identification card is one factor to be considered when determining insurance coverage, along with the payment of premiums by the insured. See Jacobs v. Louisiana Indent. Ins. Co., 96-1203 (La.App. 3 Cir. 3/12/97), 692 So.2d 1182, 1184-1185. writ denied, 97-0958 (La.5/16/97), 693 So.2d 802; Smith v. American Lloyds Ins. Co., 95-0235 (La.App. 4 Cir. 10/26/95), 663 So.2d 531, 532, writ denied, 95-2826 (La.2/2/96), 666 So.2d 1085.

. We distinguish the line of cases overturning default judgments where the insurance policy was not offered into evidence, because the case currently before us involved a full trial where the trial court heard, accepted, and considered evidence of the existence of the insurance policy and coverage. See Arias v. Stolthaven New Orleans, L.L.C., 08-1111 (La.5/5/09), 9 So.3d 815, 824; Nelson v. Merrick, 06-2381 (La.App. 1 Cir. 9/19/07), 970 So.2d 1019, 1021; Holland v. Aetna Life & Cas. Ins. Co., 385 So.2d 316, 317 (La.App. 1 Cir.1980).